BRADFORD
EDWARDS LLP

Denver G. Edwards
Partner
12 E 49th Street, Floor 11
New York, NY 10017
O: (917) 671-9407
M: (646) 455-9044
dedwards@bradfordedwards.com

May 10, 2024

**VIA CM/ECF**

Hon. Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    **Trident Capital Group Fund I LLC v. The Nasdaq Stock Market, LLC** *et al.*,
               No. 24-cv-2318

Dear Judge Gonzalez:

    Pursuant to Your Honor's Individual Practices, we submit this response to the request by The Nasdaq Stock Market, LLC and Arnold Golub (the **"Defendants"**) for a pre-motion conference seeking authorization to move to dismiss the claims against them in the Complaint. We respond to Defendants' claims seriatim.

    Defendants contend that NASDAQ, as a self-regulatory organization, has absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities. DE 19 at 2. In *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011), the Second Circuit *cautioned* that the immunity doctrine "is of rare and exceptional character" and "courts must examine the invocation of absolute immunity on a case-by-case basis." *Id*. (citing *DL Capital Group, LLC v. Nasdaq. Stock Mkt., Inc*., 409 F.3d 93, 97 (2d Cir. 2005). The Second Circuit applies a function test based on examination of the facts to determine whether an SRO is entitled to immunity. *Id*. Unlike other cases involving adjudicatory, disciplinary, or regulatory actions, the Complaint alleges that NASDAQ's conduct was based on racial animus toward Minorities Equality Opportunities Acquisition, Inc. (MEOA), and its demand that MEOA use the OTC price for valuation purposes was a pretext to refuse to uplist MEOA to the NASDAQ exchange, when it permitted other similarly situated non-diverse firms to uplist. This case tests the "rare and exceptional character" of SRO immunity in the face of discriminatory conduct.

    The Complaint alleges sufficient facts to show state action. The Fifth Amendment applies to private entities when their "actions are found to be 'fairly attributable' to the government." *DL Cromwell Investments, Inc. v. NASD Regulation, Inc*., 279 F.3d 155, 161 (2d Cir. 2002). "Actions are 'fairly attributable' to the government where 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity.'" *Id*., quoting *Jackson v. Metropolitan*

1

*Edison Co.*, 419 U.S. 345, 351 (1974). "Such a close nexus exists in a few limited circumstances—including, for example: (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Alliance for Fair Board Recruitment v. SEC*, 85 F.4th 226, 239-240 (5th Cir. 2023) (internal quotation omitted). The Complaint alleges that Defendant Golub told Mr. Rochester that the SEC required that NASDAQ use the publicly traded price of the target company; that NASDAQ must follow the SEC guidelines in these circumstances; and that NASDAQ did not have discretion to act unless SEC guidelines specifically granted NASDAQ such discretion. Compl. ¶ 63. The Complaint therefore sufficiently alleges that the SEC "compel[led]" NASDAQ "to take a particular action" and that NASDAQ's actions were "fairly attributable" to the government.

With respect to finality, the "core question" is "whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (internal quotations omitted). "The Supreme Court has interpreted the 'finality' element in a pragmatic way" and has "explained that if an agency has issued a 'definitive statement of its position, determining the rights and obligations of the parties,' the agency's action is final notwithstanding '[t]he possibility of further proceedings in the agency' on related issues, so long as 'judicial review at the time [would not] disrupt the administrative process." *Id.* at 88-89, quoting *Bell v. New Jersey*, 461 U.S. 773, 779-80 (1983). Here, NASDAQ's insistence on using the OTC price was a "definitive statement of its position" which affected MEOA's rights and obligations, and therefore constituted final action for purposes of the APA.

Defendants cite case law for the proposition that there is no private right of action under the Exchange Act "to challenge an exchange's failure to follow its own rules." DE 19 at 2, quoting *Desiderio v. Nat'l Ass'n of Secs. Dealers*, 191 F.3d 198, 208 (2d Cir. 1999). This is irrelevant, as Plaintiff does not assert a claim for violation of the Exchange Act.

Plaintiff's claims are not preempted by the Exchange Act. When "a jurisdictional scheme is explicitly laid out in the statute, preclusion of district court review turns on whether 'a finding of preclusion could foreclose all meaningful judicial review;' if the suit is 'wholly collateral to a statute's review provisions;' and if the claims are 'outside the agency's expertise.'" *Altman v. U.S. SEC*, 768 F. Supp. 2d 554, 559 (S.D.N.Y. 2011), quoting *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489-90 (2010) (internal quotation omitted).

Plaintiff contends that NASDAQ acted outside of its delegated authority in an overtly discriminatory manner which: (1) infringed upon MEOA's constitutional rights; and (2) tortiously interfered with MEOA's business relationships. Defendants weaponized a scheme of pretextual "regulatory actions" with the intention of thwarting Plaintiff's business combination based on Plaintiff's racial composition and mission. The racial disparity component of this litigation alone makes Plaintiff's claims wholly collateral to a statute's review process and certainly outside the agency's expertise. Further, preclusion would leave MEOA without any meaningful judicial review. The transaction was impossible to complete based on these pretextual regulatory actions. The facts alleged, taken as true, state a plausible claim for tortious interference.

The Complaint sufficiently alleges a claim for tortious interference with advantageous business relationships. First, the Complaint expressly alleges that "NASDAQ also sought a range of information from MEOA regarding the business combination, including, among other things, MEOA's correspondence with the SEC; information involving active litigation; the source of funds in MEOA's trust account; the composition of the combined company's board of directors; the expected date of initial trading for the merged company; the total shares outstanding versus publicly tradable shares of the merged company; round lot analysis; a share redemption schedule; a non-objecting list of beneficial owners; and a Broadridge share range analysis." Compl. ¶ 40. Second, the Complaint alleges that NASDAQ "deviated from its ordinary business practices when evaluating majority led companies in SPAC transactions and applied arbitrary and capricious requirements to MEOA *with the intention* of blocking MEOA's Business Combination." Compl. ¶ 84 (emphasis added). The Complaint therefore alleges both NASDAQ's knowledge of Plaintiff's business relationships and a specific intent to interfere with them.

The Complaint also contains sufficient allegations to establish Defendant Golub's personal liability. For example, the Complaint alleges that "Mr. Golub told Mr. Rochester that the SEC required that NASDAQ use the publicly traded price; that NASDAQ must follow SEC guidelines; and that NASDAQ did not have discretion to act unless SEC guidelines specifically granted NASDAQ such discretion." Compl. ¶ 63. As alleged in the Complaint, that statement is: (1) inconsistent with what Defendants previous statements, (2) inconsistent with NASDAQs treatment with majority owned SPACs, and (3) belied by subsequent NASDAQ actions. Sufficient facts have been alleged against Defendant Golub.

For the foregoing reasons, Plaintiff respectfully submits that Defendants' request should be denied in its entirety.

Respectfully submitted,
/s/ Denver G. Edwards
Denver G. Edwards, Esq.

cc: All Counsel (Via ECF)