**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| TRIDENT CAPITAL GROUP FUND I LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cv-02318-HG |
| THE NASDAQ STOCK MARKET, LLC, BENJAMIN HASKELL, NIKOLAI UTOCHKIN, EUN AH CHOI, ARNOLD GOLUB, AND STANLEY HIGGINS, | ) ) ) ) ) | **Oral Argument Requested** |
| Defendants. | ) ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

---

Amir C. Tayrani, *pro hac vice*
Alex Gesch, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
AGesch@gibsondunn.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND .................................................................................................3

       A.   Nasdaq's Regulatory Listing Responsibilities ....................................................3

       B.   Trident's Listing Application And This Litigation ..................................................5

III.   LEGAL STANDARD ...........................................................................................7

IV.    ARGUMENT .......................................................................................................7

       A.   Nasdaq And The Individual Defendants Are Absolutely Immune For All Of The
            Challenged Conduct ...........................................................................................7

            1.   Nasdaq And Its Employees Are Immune From Private Damages Suits
                 Challenging Conduct In Connection With Their Regulatory Responsibilities........8

            2.   All Of The Challenged Conduct Is Incident To Nasdaq's Immune Regulatory
                 Listing Duties ...........................................................................................9

       B.   Trident's Federal Claims Fail To State A Claim ...............................................13

            1.   Nasdaq Is A Private Entity Not Subject To The Constitution Or The APA..........13

            2.   Trident Fails To Allege Final Agency Action .......................................................16

            3.   Trident Lacks A Private Right Of Action .............................................................18

       C.   Trident's Tortious Interference Claim Fails To State A Claim Under New York
            Law ...................................................................................................................20

            1.   Trident's State-Law Claim Is Preempted.............................................................20

            2.   Trident Fails To State A Claim For Tortious Interference ...................................22

       D.   Trident Fails To Allege Any Misconduct By The Individual Defendants.....................23

V.     CONCLUSION ..................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Altman v. SEC*,
    687 F.3d 44 (2d Cir. 2012)...................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................7

*Atterbury v. U.S. Marshals Serv.*,
    805 F.3d 398 (2d Cir. 2015)............................................................................................20

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) .......................................................................................23

*Barbara v. NYSE*,
    99 F.3d 49 (2d Cir. 1996) ................................................................................................8

*Belfort v. NASD*,
    1994 WL 97021 (S.D.N.Y. Mar. 24, 1994) ...............................................................5, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................7

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)........................................................................................................15

*Carlson v. Green*,
    446 U.S. 14 (1980)..........................................................................................................20

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)..........................................................................................................19

*D'Alessio v. NYSE*,
    258 F.3d 93 (2d Cir. 2001)............................................................................................8, 9

*D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*,
    279 F.3d 155 (2d Cir. 2002)......................................................................................13, 15

*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999)........................................................................................................18

*Desiderio v. NASD*,
    191 F.3d 198 (2d Cir. 1999).......................................................................2, 12, 13, 15, 18, 21

*DL Capital Grp., LLC v. NASDAQ Stock Mkt.*,
   409 F.3d 93 (2d Cir. 2005)..............................................................................4, 9, 11, 12

*Edmonson v. Leesville Concrete Co.*,
   500 U.S. 614 (1991).......................................................................................................13

*Effex Cap., LLC v. Nat'l Futures Ass'n*,
   933 F.3d 882 (7th Cir. 2019) ...................................................................................19, 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013)...........................................................................9

*Feins v. Am. Stock Exch., Inc.*,
   81 F.3d 1215 (2d Cir. 1996)............................................................................................18

*Fog Cutter Cap. Grp. Inc. v. SEC*,
   474 F.3d 822 (D.C. Cir. 2007) ........................................................................................5

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010).......................................................................................................14

*Imbler v. Pachtman*,
   424 U.S. 409 (1976).........................................................................................................9

*Jones v. SEC*,
   115 F.3d 1173 (4th Cir. 1997) ........................................................................................13

*Katz v. Travelers*,
   241 F. Supp. 3d 397 (E.D.N.Y. 2017) ...........................................................................22

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)............................................................................................22

*Lanier v. Bats Exch., Inc.*,
   838 F.3d 139 (2d Cir. 2016)..............................................................................3, 20, 22

*Laureatus Grp., LLC v. U.S. Dep't of Treasury*,
   2023 WL 5929412 (D.D.C. Sept. 12, 2023) ..................................................................16

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995).......................................................................................................14

*Lee Dodge, Inc. v. Sovereign Bank, N.A.*,
   148 A.D.3d 1007 (N.Y. App. Div. 2017) ......................................................................22

*Leytman v. NYSE*,
   1995 WL 761843 (E.D.N.Y. Dec. 6, 1995) ...................................................................16

*Ludwig's Drug Store, Inc. v. Forest City Enters., Inc.*,
   2016 WL 915102 (E.D.N.Y. Mar. 4, 2016) ....................................................23

*Minneci v. Pollard*,
   565 U.S. 118 (2012) ........................................................................................19

*North v. Smarsh, Inc.*,
   160 F. Supp. 3d 63 (D.D.C. 2015) ..................................................................15

*In re NYSE Specialists*,
   503 F.3d 89 (2d Cir. 2007) ..................................................................1, 2, 8, 12

*Perpetual Secs., Inc. v. Tang*,
   290 F.3d 132 (2d Cir. 2002) ...........................................................................14

*S.G. v. Bank of China Ltd.*,
   2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024) ...............................................12

*Scher v. NASD*,
   386 F. Supp. 2d 402 (S.D.N.Y. 2005) ..............................................................8

*In re Series 7*,
   548 F.3d 110 (D.C. Cir. 2008) ..........................................................12, 20, 21

*Shmueli v. City of New York*,
   424 F.3d 231 (2d Cir. 2005) ...........................................................................12

*Shultz v. SEC*,
   614 F.2d 561 (7th Cir. 1980) ..........................................................................16

*Sparta Surgical v. NASD*,
   159 F.3d 1209 (9th Cir. 1998) .......................................................8, 11, 12, 19, 21

*Standard Inv. Chartered, Inc. v. NASD*,
   637 F.3d 112 (2d Cir. 2011) ..................................................................1, 8, 9, 11

*Top Choice Distrib., Inc. v. U.S. Postal Serv.*,
   138 F.3d 463 (2d Cir. 1998) ...........................................................................16

*United States v. Shvarts*,
   90 F. Supp. 2d 219 (E.D.N.Y. 2000) ..............................................................14

*Wey v. Nasdaq, Inc.*,
   188 A.D.3d 587 (N.Y. App. Div. 2020) ...................................................8, 9, 11

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ........................................................................................19

**Statutes**

5 U.S.C. § 701 ...................................................................................................................15

5 U.S.C. § 702 ...................................................................................................................18

5 U.S.C. § 703 ...................................................................................................................16

5 U.S.C. § 704 ...................................................................................................................16

15 U.S.C. § 78f ................................................................................................................3, 4

15 U.S.C. § 78*l* .............................................................................................................4, 10

15 U.S.C. § 78s ..................................................................................3, 4, 5, 9, 18, 20, 21

15 U.S.C. § 78y ...................................................................................5, 9, 16, 18, 21

**Rules**

17 C.F.R. § 201.420 ..........................................................................................................18

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 7

Nasdaq Rule 5101 .........................................................................................................5, 11

Nasdaq Rule 5405 ...........................................................................................................4, 5

Nasdaq Rule 5801 .............................................................................................................17

Nasdaq Rule 5815 .............................................................................................................17

Nasdaq Rule 5820 .............................................................................................................17

Nasdaq Rule 5825 .............................................................................................................17

**Other Authorities**

By-laws of The Nasdaq Stock Market LLC,
    https://tinyurl.com/2p99k62s .....................................................................................4

Phil Mackintosh, *Nasdaq: 50 Years of Market Innovation* (Feb. 11, 2021),
    https://tinyurl.com/2x3z3uda .....................................................................................3

*In the Matter of the Application of Nasdaq Stock Market LLC*, Release No. 34-
    53128, 71 Fed. Reg. 3,550 (Jan. 23, 2006) ...........................................................3, 4

*Matter of Frank L. Palumbo*, 52 S.E.C. 467 (1995) ......................................................15

*Matter of Sumner Cotzin*, 45 S.E.C. 575 (1974) ..................................................................16

Nasdaq, Initial Listing Guide (Jan. 2024), *available at*
   https://listingcenter.nasdaq.com/assets/initialguide.pdf..............................................6

Order Approving Additional Listing Requirements for Companies Applying to
   List After Consummation of a "Reverse Merger" with a Shell Company,
   Exchange Act Release No. 34-65708, 76 Fed. Reg. 70,799 (Nov. 15, 2011) .......................10

Order Approving Proposed Rule Changes to Modify Certain Nasdaq Listing
   Requirements, Exchange Act Release No. 34-57981, 73 Fed. Reg. 35,716
   (June 24, 2008)..............................................................................................................10

S. Rep. No. 94-75 (1975) ..........................................................................................................16

Defendants The Nasdaq Stock Market LLC, Benjamin Haskell, Nikolai Utochkin, Eun Ah Choi, Arnold Golub, and Stanley Higgins move to dismiss with prejudice all claims for relief asserted in the Complaint under Federal Rule of Civil Procedure 12(b)(6).

## I.       INTRODUCTION

Plaintiff Trident Capital Group Fund I LLC ("Trident") alleges that The Nasdaq Stock Market LLC ("Nasdaq")—a private securities exchange registered as a self-regulatory organization under the Securities Exchange Act of 1934 ("Exchange Act") and regulated by the Securities and Exchange Commission ("SEC")—and several of its employees abused their regulatory discretion in evaluating an application to list securities on Nasdaq's exchange and in deciding to halt trading of a stock in which Trident's members held a minority interest.  Rather than objecting to Nasdaq's regulatory conduct before the SEC through the Exchange Act's exclusive review framework, Trident filed this suit for damages asserting claims under the Administrative Procedure Act ("APA"), the Equal Protection Clause of the Fourteenth Amendment, and New York common law for tortious interference with advantageous business relationship.  Trident's claims are legally deficient in multiple respects.

As a threshold matter, all of Trident's claims are barred by Nasdaq's regulatory immunity, which the Second Circuit has repeatedly held provides self-regulatory organizations and their employees with "absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities."  *E.g.*, *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115 (2d Cir. 2011) (per curiam).  Trident's claims challenge core regulatory functions performed by Nasdaq:  the implementation and enforcement of standards for the listing and trading of public companies' securities on its exchange.  Because Nasdaq and its employees are absolutely immune for conduct "incident to" Nasdaq's regulatory responsibilities, *In re NYSE Specialists*, 503 F.3d

89, 98 (2d Cir. 2007)—and because an alleged "wrongful motive," such as Trident's baseless allegations of racial animus, is insufficient to overcome regulatory immunity, *id.* at 96—the Court need proceed no further to dismiss the Complaint in its entirety.

Trident's claims also fail for numerous additional reasons. In particular, Trident entirely ignores that, although Nasdaq carries out delegated regulatory responsibilities in its self-regulatory capacity, it is indisputably a private company, not a government agency. The Second Circuit has therefore repeatedly rejected attempts to subject Nasdaq and other self-regulatory organizations to the requirements of the U.S. Constitution, as Trident attempts to do here through its equal-protection claim. *See*, *e.g.*, *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) ("NASD is a private actor, not a state actor"). For similar reasons, self-regulatory organizations like Nasdaq are not federal agencies subject to an APA claim. And even if the APA were relevant here, Trident has not identified the requisite final agency action to trigger judicial review—indeed, Nasdaq is not even alleged to have reached a final decision on the listing application and the SEC was never asked to review Nasdaq's actions—and seeks monetary relief unavailable under the APA.

Trident's federal claims also fail because it lacks a private right of action to pursue those claims in this Court. Congress did not create a private right of action to challenge an exchange's alleged failure to follow its own rules. The Exchange Act's statutorily prescribed review process—which commences with administrative review before the SEC and culminates in a petition for review to a circuit court of appeals—is the exclusive avenue to seek redress regarding a self-regulatory organization's regulatory conduct. Trident has not followed that process. Trident's equal-protection claim similarly fails because there is no *Bivens* remedy available against a private corporation or its private employees.

Trident's state-law tortious interference claim also suffers from numerous fatal flaws (in addition to being barred by regulatory immunity).  To begin with, the Exchange Act's comprehensive statutory framework preempts Trident's state-law challenge to Nasdaq's regulatory actions.  Allowing Trident's claim to proceed would undermine the intent of Congress, the structure of the Exchange Act, and the SEC's oversight of national securities exchanges.  For this reason, courts have consistently held that the Exchange Act preempts state-law claims based on a self-regulatory organization's exercise of its regulatory duties.  *See, e.g.*, *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 151-52 (2d Cir. 2016).  The Complaint also fails to state a claim under New York law because Trident does not allege that Nasdaq or its employees knew of Trident's relationship with the company that submitted the listing application and intentionally interfered with that relationship.

Finally, the Complaint's threadbare assertions regarding the individual defendants—who were duly carrying out regulatory responsibilities on their employers' behalf but now find themselves named as defendants in their personal capacities—fall far short of plausibly alleging any specific misconduct by those defendants that could give rise to a viable claim for relief.

For all of these reasons, the Complaint should be dismissed with prejudice.

## II.      BACKGROUND

### A.      Nasdaq's Regulatory Listing Responsibilities

Nasdaq is a national securities exchange registered as a self-regulatory organization under the Exchange Act.  15 U.S.C. §§ 78f(a), 78s.  Nasdaq was launched in 1971 by the National Association of Securities Dealers ("NASD")—a private self-regulatory organization responsible for regulating broker-dealers—and spun off in 2006, when it registered with the Commission as an exchange.  *See In the Matter of the Application of Nasdaq Stock Market LLC*, Release No. 34-53128, 71 Fed. Reg. 3,550 (Jan. 23, 2006); Phil Mackintosh, *Nasdaq: 50 Years of Market Innovation* (Feb. 11, 2021), https://tinyurl.com/2x3z3uda.

Nasdaq's board of directors is selected by its broker-dealer members and by its corporate parent, Nasdaq, Inc.; neither the SEC nor any other government agency has the power to appoint a director to Nasdaq's board or otherwise control board membership.  *See* By-laws of The Nasdaq Stock Market LLC, arts. II–III, https://tinyurl.com/2p99k62s.

Under the Exchange Act, Nasdaq regulates the listing and trading of securities on its exchange, subject to a "comprehensive remedial scheme" that provides for extensive SEC oversight of Nasdaq's activities.  *Altman v. SEC*, 687 F.3d 44, 45 (2d Cir. 2012).  Self-regulatory organizations like Nasdaq must promulgate rules "to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade," and "to protect investors and the public interest."  15 U.S.C. § 78f(b)(5).  Nasdaq must submit all its proposed rules for review and (with limited exceptions) approval by the SEC.  *Id.* § 78s(b).  Nasdaq is required to comply with its own rules, the Exchange Act, and regulations promulgated under the Act, and must ensure that its members and persons affiliated with its members do so as well.  *Id.* § 78s(g)(1).  If Nasdaq violates its rules, the Exchange Act, or regulations thereunder, the SEC may take disciplinary action against it.  *Id.* § 78s(h)(1).

Nasdaq's "regulatory powers and responsibilities" include the duty "to formulate . . . listing criteria" and "to enforce those policies and rules."  *DL Capital Grp., LLC v. NASDAQ Stock Mkt.*, 409 F.3d 93, 95 (2d Cir. 2005); *see also* 15 U.S.C. § 78*l*(d).  Nasdaq has established a comprehensive set of rules that govern the listing of securities on its exchange, and the SEC has approved those rules.  *See* 71 Fed. Reg. at 3,564.  Nasdaq's rules governing an initial listing on The Nasdaq Global Market (the middle tier of Nasdaq's exchange) require that the company meet a number of mandatory standards, including a minimum bid price of at least $4 per share, a minimum number of publicly held shares, and a minimum number of round-lot holders.  *See* Nasdaq Rule 5405(a).

The rules also require meeting at least one set of additional standards regarding the company's income, equity, market value, or total assets/total revenue at the time of the initial listing, *see* Nasdaq Rule 5405(b)(1)-(4); for example, the market value standard requires that the listed securities have a market value of at least $75 million, *see* Nasdaq Rule 5405(b)(3).  Like other regulatory decisions that Nasdaq makes, Nasdaq's application of those rules in a particular listing decision is subject to review by the SEC and ultimately a federal court of appeals.  15 U.S.C. § 78s(d)(1)-(2); *id.* § 78y(a)(1).

In addition to setting out specific listing standards, Nasdaq's SEC-approved rules grant it "broad discretionary authority over the initial and continued listing of securities."  Nasdaq Rule 5101.  Nasdaq may exercise that discretion to "apply additional or more stringent criteria for the initial or continued listing of particular securities, . . . even though the securities meet all enumerated criteria for initial or continued listing on Nasdaq."  *Id.*  Employing its SEC-approved discretion, Nasdaq declines to list, or delists, companies that pose a threat to the exchange, investors, or the public interest.  *See id.*; *see also Fog Cutter Cap. Grp. Inc. v. SEC*, 474 F.3d 822, 825 (D.C. Cir. 2007) (concluding in delisting dispute that self-regulatory organization's SEC-approved by-laws provided "broad discretion to determine whether the public interest requires delisting securities"); *Belfort v. NASD*, 1994 WL 97021, at *1 (S.D.N.Y. Mar. 24, 1994) (same).

In lieu of listing on Nasdaq's exchange, companies are free to decide to list with a competitor exchange (such as the New York Stock Exchange ("NYSE")), publicly trade without listing ("over-the-counter"), or go private.

## B.  Trident's Listing Application And This Litigation

According to the Complaint, Trident's members were investors in Minority Equality Opportunities Acquisition, Inc. ("MEOA").  *See* Compl. at 1.  MEOA was a special purpose acquisition company listed on The Nasdaq Capital Market—the lowest tier of Nasdaq's exchange

designed for small-cap companies—that in 2023 sought to merge with Digerati Technologies, Inc., a company trading on the over-the-counter market. *See id.* ¶¶ 1, 13-14. MEOA applied to list the combined company on Nasdaq's Global Market, *id.* ¶ 37, a higher listing tier on Nasdaq's exchange with more stringent requirements than The Nasdaq Capital Market, *see* Nasdaq, Initial Listing Guide 5 (Jan. 2024), *available at* https://listingcenter.nasdaq.com/assets/initialguide.pdf.

Exercising its regulatory listing duties, Nasdaq evaluated MEOA's application to list the combined company on Nasdaq's exchange, including requesting additional information about MEOA's valuation of the combined company to ascertain whether the market value of the company's listed securities would meet the requirements set by Nasdaq's rules. *See* Compl. ¶¶ 40-41. Nasdaq informed MEOA that it "must use the publicly traded price of the target company for valuation purposes." *Id.* ¶ 44. During Nasdaq's review of MEOA's application, MEOA's share price rose from $10.75 per share to $40.25 per share, *see id.* ¶ 46, and Nasdaq made a regulatory decision to halt trading in MEOA's securities due to "low levels of liquidity," *id.* ¶¶ 17 n.13, 46. Prior to any final listing decision by Nasdaq, MEOA decided in July 2023 that it would redeem its public shares, abandon the proposed merger, and liquidate. *See id.* ¶ 65.

Nine months later, Trident filed this suit against Nasdaq and several Nasdaq employees—Benjamin Haskell, Nikolai Utochkin, Eun Ah Choi, Arnold Golub, and Stanley Higgins (collectively, the "Individual Defendants"). Challenging Nasdaq's exercise of its self-regulatory duties under the Exchange Act, the Complaint alleges that Nasdaq "abused its discretion" by applying a valuation methodology for the combined company that yielded a lower value than the methodology MEOA had proposed, Compl. ¶¶ 74-76, 79; "elected to use its discretion to block this transaction" while "exercising its delegated authority from the SEC," *id.* ¶¶ 81, 91; and "created insurmountable obstacles to stop MEOA and Digerati from closing the Business Combination using

arbitrary and capricious regulatory decisions to reach their desired result," including "halt[ing] trading in MEOA's securities purportedly due to volatility," *id.* ¶¶ 97, 99.  Trident seeks money damages based on claims under the APA and the Equal Protection Clause of the Fourteenth Amendment, as well as a claim under New York law for tortious interference with advantageous business relationships.

## III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  A court need not accept as true legal conclusions set forth in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ARGUMENT

### A.   Nasdaq And The Individual Defendants Are Absolutely Immune For All Of The Challenged Conduct.

All of Trident's claims are barred by Nasdaq's self-regulatory immunity.  Every court to consider similar claims has concluded that self-regulatory organizations like Nasdaq, and their employees, are entitled to absolute immunity from private damages suits challenging conduct in connection with the exercise of their regulatory responsibilities under the Exchange Act.  Because all of Trident's claims are based on the exercise of Nasdaq's listing-related regulatory responsibilities, Nasdaq and the Individual Defendants are absolutely immune from each of the three claims alleged in the Complaint.

1.      **Nasdaq And Its Employees Are Immune From Private Damages Suits Challenging Conduct In Connection With Their Regulatory Responsibilities.**

An unbroken chain of authority has left "no question" that a self-regulatory organization like Nasdaq and its employees "are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities." *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115 (2d Cir. 2011) (per curiam); *see, e.g.*, *In re NYSE Specialists*, 503 F.3d 89, 96 (2d Cir. 2007) (federal statutory and New York common-law claims); *D'Alessio v. NYSE*, 258 F.3d 93, 100, 106 (2d Cir. 2001) (New York common-law claims); *Sparta Surgical v. NASD*, 159 F.3d 1209, 1213-15 (9th Cir. 1998) (common-law claims), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016); *Wey v. Nasdaq, Inc.*, 188 A.D.3d 587, 587 (N.Y. App. Div. 2020) (New York common-law claims against Nasdaq and its employees); *Barbara v. NYSE*, 99 F.3d 49, 53, 59 (2d Cir. 1996) (Fifth Amendment claim), *abrogated in part on other grounds by Manning*, 136 S. Ct. 1562; *Scher v. NASD*, 386 F. Supp. 2d 402, 407 (S.D.N.Y. 2005) (same), *aff'd*, 218 F. App'x 46 (2d Cir. 2007).

Because self-regulatory organizations "stand[ ] in the shoes of the SEC" when carrying out their delegated self-regulatory responsibilities under the Exchange Act, "[i]t follows that [they] should be entitled to the same immunity enjoyed by the SEC when" they are "performing functions delegated to [them] under the SEC's broad oversight authority." *D'Alessio*, 258 F.3d at 105.  Immunity provides self-regulatory organizations with "breathing room to exercise their powers" without having to worry that regulatory decisions might "engender endless litigation." *NYSE Specialists*, 503 F.3d at 97.  Self-regulatory immunity does not mean, however, that exchanges are exempt from all regulatory supervision.  Exchanges are subject to comprehensive oversight by the SEC, *see id.* at 101-02, and aggrieved persons can challenge exchanges' regulatory decisions in

administrative proceedings that can be reviewed in a federal court of appeals, *see* 15 U.S.C. § 78s(d)(1)-(2); *id.* § 78y(a)(1).

Officers and employees of self-regulatory organizations "are similarly shielded by [self-regulatory] immunity," which "depend[s] on 'the nature of the function performed, not the identity of the actor who performed it.'" *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 449-50 (S.D.N.Y. 2013) (concluding that "NASDAQ, NASDAQ OMX, and its officers will be treated identically for purposes of immunity" (citation omitted)); *see also*, *e.g.*, *Standard Inv. Chartered*, 637 F.3d at 115 (a self-regulatory organization "and its officers are entitled to absolute immunity"); *DL Capital*, 409 F.3d at 97 (affirming dismissal of claim against Nasdaq and its CEO on the basis of absolute immunity); *D'Alessio*, 258 F.3d at 95 & n.1 (affirming dismissal of claims against NYSE, NYSE's chairman, an NYSE group executive vice president, and a senior vice president of NYSE on the basis of absolute immunity); *Wey*, 188 A.D.3d at 587 (holding that "the Nasdaq Stock Market, its parent (defendant Nasdaq, Inc.), and the individual defendants, who are officers and/or employees of Nasdaq and/or the Nasdaq Stock Market, are entitled to absolute immunity"). Immunity for exchanges' officers and employees serves the same purpose as prose-cutorial and judicial immunity: it enables individuals to exercise judgment in a "vigorous and fearless" manner, without being "constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 424-25, 427-28 (1976).

**2.    All Of The Challenged Conduct Is Incident To Nasdaq's Immune Regulatory Listing Duties.**

Trident's claims are foreclosed by self-regulatory immunity because each claim challenges Nasdaq's "regulatory decisions" and purported abuse of Nasdaq's delegated regulatory listing "discretion." Compl. ¶¶ 91, 99. Creating, interpreting, and enforcing listing requirements are

critical functions within Nasdaq's delegated responsibilities under the Exchange Act. *See* 15 U.S.C. § 78*l*(b), (d).

The SEC has long recognized that the "development and enforcement of adequate standards governing the initial and continued listing of securities on an exchange is an activity of critical importance to the financial markets and the investing public." Order Approving Proposed Rule Changes to Modify Certain Nasdaq Listing Requirements, Exchange Act Release No. 34-57981, 73 Fed. Reg. 35,716, 35,717 (June 24, 2008); *see also*, *e.g.*, Order Approving Additional Listing Requirements for Companies Applying to List After Consummation of a "Reverse Merger" with a Shell Company, Exchange Act Release No. 34-65708, 76 Fed. Reg. 70,799, 70,802 (Nov. 15, 2011) (similar). Listing standards enable exchanges "to screen issuers that seek to become listed, and to provide listed status only to those that are bona fide companies with sufficient public float, investor base, and trading interest likely to generate depth and liquidity sufficient to promote fair and orderly markets." 76 Fed. Reg. at 70,802. The Commission has further explained that listing standards "are important given investor expectations regarding the nature of securities that have achieved an exchange listing, and the role of an exchange in overseeing its market and assuring compliance with its listing standards." *Id.*

The Complaint alleges that all the conduct at issue—both Nasdaq's evaluation of MEOA's application to list the post-merger entity on Nasdaq's exchange and Nasdaq's decision to halt trading in MEOA's shares—relates to these immune regulatory duties and Nasdaq's purported abuse of its regulatory discretion. *See* Compl. ¶ 79 (APA claim; "NASDAQ arbitrarily and capriciously abused its discretion to prevent MEOA from completing its Business Combination"); *id.* ¶ 91 (equal-protection claim; "Nasdaq elected to use its discretion to block this transaction"); *id.* ¶ 99 (tortious interference claim; alleging Nasdaq's use of "arbitrary and capricious regulatory

decisions to reach their desired result"); *id.* Section C & ¶¶ 38-39 (challenging "The NASDAQ Listing Process" and "NASDAQ's review process"); *id.* ¶ 47 ("Admittedly, NASDAQ has broad discretion regarding listing securities," citing Nasdaq Rule 5101, but contending that none of the "enumerated market-based reasons for prohibiting a stock listing are applicable"); *id.* ¶ 52 ("NASDAQ's regulatory discretion morphed into arbitrary and capricious behavior."). These allegations make clear that all of the conduct challenged by Trident was undertaken by Nasdaq "in connection with the discharge of [its] regulatory responsibilities" and is therefore immune from suit. *Standard Inv. Chartered*, 637 F.3d at 115.

Precedent confirms this conclusion. Case after case has applied self-regulatory immunity to bar similar claims challenging an exchange's exercise of its regulatory duties to enforce listing standards, including by halting trading in listed securities. In *DL Capital*, for example, the Second Circuit held that Nasdaq was "protected by absolute immunity" for actions arising out of Nasdaq's determination to halt trading in a security and its public statements regarding that regulatory decision. *See* 409 F.3d at 100. And the Ninth Circuit in *Sparta* similarly found NASD immune from claims challenging "trading suspension and temporary de-listing" because "there are few functions more quintessentially regulatory than suspension of trading." 159 F.3d at 1213-15 ("When it acts in this capacity to suspend trading, NASD is performing a regulatory function cloaked in immunity."); *see also Wey*, 188 A.D.3d at 587 (holding that absolute immunity barred claims against Nasdaq and its employees based on actions to enforce Nasdaq's round-lot holder listing requirement). Trident's allegations regarding Nasdaq's exercise of its regulatory listing duties in assessing MEOA's listing application for compliance with Nasdaq's rule governing the market value of the combined company and halting trading in MEOA's stock are indistinguishable from the immunity-barred claims in these cases.

Trident cannot escape Nasdaq's well-settled immunity based on assertions of "racial ani-mus," "discriminatory conduct," or "pretext[ual]" actions by Nasdaq—Trident's sole response in its pre-motion conference letter to the wall of self-regulatory immunity precedent.  D.E. 22 at 1; *see* Compl. ¶ 52 (alleging "[o]n information and belief" that "animus toward MEOA and its mis-sion" motivated Nasdaq's regulatory actions); *id.* ¶¶ 58, 66 (alleging "pretext").  Setting aside the utterly baseless nature of Trident's assertions, the determinative question in applying self-regula-tory immunity is "whether [the] specific [challenged] acts and forbearances were incident to the exercise of regulatory power," *NYSE Specialists*, 503 F.3d at 98 (emphasis omitted)—not the al-leged "propriety of those actions or inactions" or the self-regulatory organization's motives, *id.* at 95-96, 98.  To prevent plaintiffs from simply pleading around regulatory immunity, the doctrine "'accords protection'" from "'any judicial scrutiny of the motive for and reasonableness of official action,'" "even where the challenged conduct was motivated by a wrongful motive or even mal-ice."  *Id.* at 95-96 (quoting *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005)).

Courts have thus "declined to craft exceptions [to self-regulatory immunity] for bad faith (*Desiderio [v. NASD]*, 191 F.3d [198,] 208 [(2d Cir. 1999)]), fraud (*DL Capital*, 409 F.3d at 98), negligence, or even gross negligence (*Sparta*, 159 F.3d at 1215)."  *In re Series 7*, 548 F.3d 110, 115 (D.C. Cir. 2008); *see, e.g.*, *S.G. v. Bank of China Ltd.*, 2024 WL 1861158, at *4 (S.D.N.Y. Apr. 29, 2024) (rejecting argument that immunity did not apply due to alleged "bad faith" of self-regulatory organization because immunity does not depend "'on the propriety of those actions or inactions'" (citation omitted)).  Those authorities confirm that Nasdaq and the Individual Defend-ants are absolutely immune for all of the challenged conduct—all of which was carried out in connection with Nasdaq's regulatory listing responsibilities—notwithstanding unfounded allega-tions of improper actions or illicit motives.

The Court need proceed no further to dismiss all of the claims against Nasdaq and the Individual Defendants with prejudice.

**B.      Trident's Federal Claims Fail To State A Claim.**

Trident's attempt to impose federal-law liability on Nasdaq and the Individual Defendants for carrying out their self-regulatory responsibilities also fails for numerous additional reasons.

**1.      Nasdaq Is A Private Entity Not Subject To The Constitution Or The APA.**

**a.**  Trident's equal-protection claim fails because Nasdaq is a private company and its employees are private employees, not government actors subject to constitutional scrutiny.[1]

"[T]he conduct of private parties lies beyond the Constitution's scope in most instances." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).  The Second Circuit and other courts across the country (as well as the SEC) have therefore rejected similar attempts to extend constitutional requirements to self-regulatory organizations and their employees, including stock exchanges like Nasdaq and the NYSE and national securities associations like the NASD.  *See*, *e.g.*, *Desiderio*, 191 F.3d at 206-07 ("The NASD is a private actor, not a state actor," and "we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD—is not a state actor."); *D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (collecting cases "repeatedly" holding that "the NASD itself is not a government functionary"); *Jones v. SEC*, 115 F.3d 1173, 1183 (4th Cir. 1997) ("agree[ing] with the SEC" that the double jeopardy clause is not applicable because the NASD "is not a governmental agency");

---

[1]  The Complaint refers to the "Equal Protection Clause of the Fourteenth Amendment," Compl. ¶ 82, which by its terms applies only to the States, not the federal government.  Trident alleges that Nasdaq "functioned as an agent of the United States government," *id.* ¶ 81, not a State.  Thus, the relevant constitutional doctrine is the equal-protection component of the Fifth Amendment's Due Process Clause.  As described below, however, Trident also fails to state a claim under the Fifth Amendment for numerous reasons, including because Nasdaq is a private entity, not a state actor subject to constitutional constraints.

*United States v. Shvarts*, 90 F. Supp. 2d 219, 222 (E.D.N.Y. 2000) ("It is beyond cavil that the NASD is not a government agency . . . ."), *abrogated on other grounds by United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001); *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484-85 (2010) (referring to "private self-regulatory organizations in the securities industry" and explaining that "[u]nlike the self-regulatory organizations, . . . the [PCAOB] is a Government-created, Govern-ment-appointed entity" subject to constitutional constraints).

Trident cannot plausibly establish that Nasdaq meets the stringent criteria for treating a nominally private company as a government actor. In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court recognized a narrow, exceptional category of nominally private corporations—in that case, Amtrak—that constitute government actors because the corporation was "create[d]" by the government "for the furtherance of governmental objec-tives" and the government "retains for itself permanent authority to appoint a majority of the di-rectors of that corporation." *Id.* at 399-400. That exception does not apply to Nasdaq, which possesses none of the characteristics that led the Court to conclude that Amtrak was a state actor. Like other self-regulatory organizations, Nasdaq was not created by the government, its board of directors is not appointed by the government, and it is not funded or otherwise controlled by the government. *See Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("*Lebron* is clearly distinguishable" because there "is no commonality between NASD and Amtrak"); *see su-pra* at 3-4. Indeed, in *Tang*, the Second Circuit held that the state-action question was governed by such "clear and unambiguous precedent in this Circuit" that the district court did not err in determining that the due-process claim against a self-regulatory organization "failed to confer ju-risdiction" because the "claim of a due process violation is patently without merit." *Id.* at 138-39.

Nor has Trident pleaded any state action based on a purported nexus between the government and the *specific* listing-related conduct that Trident challenges rendering that conduct "fairly attributable" to the government and thus state action. *Desiderio*, 191 F.3d at 206-07; *D.L. Cromwell Inv.*, 279 F.3d at 161; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). For example, while the Complaint alleges that Nasdaq employees stated that "the SEC required that NASDAQ use the publicly traded price" of Digerati in calculating the value of the combined entity and that Nasdaq "must follow SEC guidelines" and "did not have discretion to act unless SEC guidelines specifically granted NASDAQ such discretion," Compl. ¶ 63; D.E. 22 at 2, Trident has expressly disclaimed any argument that the SEC *actually* required Nasdaq to use any particular valuation methodology. In the very next paragraph of the Complaint, Trident alleges that if the SEC truly mandated the use of Digerati's publicly traded price, the SEC would have "notif[ied] MEOA of its requirement." Compl. ¶ 64; *see also id.* ¶ 67 ("If the SEC had a mandate about [the] use of Digerati's OTC price, [Nasdaq] would not have needed an FAQ to state this general requirement"). According to Trident, "NASDAQ cannot support its claim that it was required to use Digerati's OTC price," *id.* ¶ 98, which means that Trident has conceded that Nasdaq's valuation methodology was not dictated by the SEC.

**b.** Similarly, Trident does not plausibly plead that Nasdaq is an "agency" subject to suit under the APA. *See* 5 U.S.C. § 701(b)(1) (defining "agency" as "each authority of the Government of the United States").

Courts and the SEC have repeatedly recognized that the "APA does not apply to SROs." *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015) (rejecting federal-question jurisdiction under the APA in challenge to the Financial Industry Regulatory Authority, Inc.) (citing *Matter of Frank L. Palumbo*, 52 S.E.C. 467, 475 (1995) ("We have repeatedly noted that the [APA] does

not apply to self-regulatory organizations such as the NASD.")); *see Shultz v. SEC*, 614 F.2d 561, 569 (7th Cir. 1980) (explaining that the "Administrative Procedure Act applies only to an 'authority of the Government of the United States'" and that the Chicago Board Options "Exchange is a Delaware non-stock corporation and not an authority of the Government" (citation omitted)).[2]

The inapplicability of the APA to self-regulatory organizations accords with the intent of Congress, which recognized in enacting the 1975 amendments to the Exchange Act that it "would be self-defeating to saddle the self-regulatory organizations with the whole panoply of Governmental administrative procedure."  S. Rep. No. 94-75, at 29 (1975).  Congress therefore adopted targeted amendments to improve the rulemaking processes of self-regulatory organizations in ways that would "hold the self-regulatory organizations to the same standards of policy justification that the Administrative Procedure Act imposes on the SEC." *Id.*  Those amendments would have been unnecessary if self-regulatory organizations were government agencies subject to APA challenges.[3]

### 2.    Trident Fails To Allege Final Agency Action.

Trident's APA claim also fails to allege "final agency action," which is required for judicial review under the APA.  5 U.S.C. § 704; *see Top Choice Distrib., Inc. v. U.S. Postal Serv.*, 138

---

[2]  *See also*, *e.g.*, *Laureatus Grp., LLC v. U.S. Dep't of Treasury*, 2023 WL 5929412, at *6 (D.D.C. Sept. 12, 2023) (dismissing APA claim against self-regulatory organization Depository Trust & Clearing Corporation because "the APA does not apply to SROs such as DTCC Defendants, which are not federal agencies within the meaning of the statute" (internal quotation marks omitted)); *Matter of Sumner Cotzin*, 45 S.E.C. 575, 578 (1974) ("the NASD is not a federal agency subject to the APA's strictures"); *cf. Leytman v. NYSE*, 1995 WL 761843, at *2 (E.D.N.Y. Dec. 6, 1995) ("The Exchange is subject to significant federal regulation, but it is not an agency of the federal government, . . . and is not subject to the disclosure requirements of the [Freedom of Information] Act." (citation omitted)).

[3]  Moreover, even if an APA action were available against Nasdaq, that suit would need to be filed in the court of appeals—not in this Court—consistent with the "form of proceeding . . . specified by statute" in the Exchange Act.  5 U.S.C. § 703; *see also* 15 U.S.C. § 78y(a)(1).

F.3d 463, 466 (2d Cir. 1998) ("the APA permits judicial review of only 'final agency action[s]'") (alteration in original).  The Complaint does not allege *any* action by the SEC—the only relevant government agency.  *See supra* Section IV.B.1.  Nor does the Complaint allege that Nasdaq made a final decision on MEOA's application to list the post-merger company on Nasdaq's exchange. The Complaint instead alleges that, before Nasdaq made a final decision approving or denying the listing application, "MEOA announced that it would redeem its public shares, not consummate the Business Combination, and liquidate."  Compl. ¶ 65.

Moreover, even if Nasdaq's listing staff had made a final decision to deny MEOA's listing application, Trident still would be unable to establish finality because any listing decision would be subject to numerous levels of internal review within Nasdaq as well as review by the SEC. Under Nasdaq's SEC-approved rules, if a company seeking listing on Nasdaq's exchange does not withdraw a deficient listing application, the Nasdaq Listing Qualifications Department will issue a written denial, which the applicant can then appeal to the Listing Qualifications Hearings Panel. *See* Nasdaq Rule 5801; Nasdaq Rule 5815 (providing that if an "application for initial listing is denied, [the applicant] may request in writing that the Hearings Panel review the matter in a written or an oral hearing").  If MEOA had received a written denial of its listing application and pursued an appeal to the Hearings Panel, the panel's decision would then have been subject to further review before the Listing Council, either by request or on the Listing Council's "own initiative." Nasdaq Rule 5820.  Following that, Nasdaq's Board would have had the authority to review a Hearings Panel or Listing Council decision.  Nasdaq Rule 5825.  Trident concedes that neither MEOA nor Trident itself took any of those steps.  *See* Compl. ¶ 65.

And because MEOA and Trident failed to seek review and obtain a final decision within Nasdaq, they also failed to exhaust administrative remedies under the Exchange Act, which

provides for SEC review of Nasdaq's final listing and delisting decisions.  *See* 15 U.S.C. § 78s(d)(1)-(2); 17 C.F.R. § 201.420.  Only after *that* decision may a person aggrieved by a final order of the Commission seek review in a designated United States Court of Appeals.  15 U.S.C. § 78y(a)(1); *see also Belfort*, 1994 WL 97021, at *1 (dismissing complaint where plaintiff had not exhausted administrative remedies in dispute regarding denial of listing).

Accordingly, Trident's APA claim must be dismissed because there has been no final decision by Nasdaq and no final agency action by the SEC, and because any judicial review must take place in the Court of Appeals, not federal district court.[4]

### 3.    Trident Lacks A Private Right Of Action.

Trident's federal claims fail for the further reason that Trident lacks a private right of action.

As explained above, Trident cannot plead a cause of action under the APA because Nasdaq is a private entity, not a government agency.  *See supra* Section IV.B.1.  Nor can Trident rely on the Exchange Act itself as the basis for a private right of action in this Court.  The Second Circuit has made clear that Congress did not create a private right of action under the Exchange Act to "challenge an exchange's failure to follow its own rules," including the listing rules at issue here.  *Desiderio*, 191 F.3d at 208; *see Feins v. Am. Stock Exch., Inc.*, 81 F.3d 1215, 1221-23 (2d Cir. 1996) (affirming dismissal of challenge to exchange's denial of membership for lack of private right of action).  The Exchange Act's statutory review process—which requires the exhaustion of administrative remedies followed by the filing of a petition for review in a court of appeals, *see* 15 U.S.C. § 78y(a)(1)—is the exclusive avenue for seeking redress regarding a self-regulatory

---

[4]  In addition, money damages—the only relief Trident seeks—are unavailable under the APA. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 263-64 (1999) (citing 5 U.S.C. § 702).

organization's regulatory conduct.  *See Sparta*, 159 F.3d at 1213 ("[A] party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act.").

Trident's equal-protection claim fares no better because there is no *Bivens* remedy—the only possible procedural mechanism for bringing a damages claim directly under the Constitution—available against a private corporation or its private employees.  The Supreme Court "has made very clear that the expansion of the *Bivens* remedy" is "a 'disfavored judicial activity.'" *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 891 (7th Cir. 2019) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).  And the Court has expressly declined to "extend th[e] limited holding" in *Bivens* "to confer a right of action for damages against private entities," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 72-74 (2001), or private employees, *see also Minneci v. Pollard*, 565 U.S. 118, 126-28 (2012)—even where the private corporation or private individual is supposedly engaged in state action triggering the application of the Constitution's requirements.

In light of those holdings, the Seventh Circuit declined to extend *Bivens* to create a private right of action against a self-regulatory organization registered under the Commodity Exchange Act.  *Effex*, 933 F.3d at 885.  The Seventh Circuit reasoned that, in the Act, "Congress has set forth, with significant precision, the remedies available to members of a[] [self-regulatory organization] and to others." *Id.* at 892.  And "where Congress has exercised comprehensively its power to regulate, there is no room, or justification, for additional regulation through court-created causes of action." *Id.*

The same is true here.  The Exchange Act creates a comprehensive framework for reviewing the regulatory decisions of Nasdaq and other self-regulatory organizations.  *See supra* Section II.A.  Because "Congress has exercised comprehensively its power to regulate," there is "[no]

justification" for extending *Bivens* to authorize a private right of action against Nasdaq or its employees. *See Effex*, 933 F.3d at 892; *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 404 (2d Cir. 2015) (explaining that the Supreme Court's "test has only rarely yielded a new *Bivens* remedy; indeed, the Supreme Court has extended *Bivens* to contexts other than unreasonable searches and seizures only twice, most recently thirty-five years ago in *Carlson v. Green*, 446 U.S. 14 [(1980)]").

**C.      Trident's Tortious Interference Claim Fails To State A Claim Under New York Law.**

Trident's tortious interference claim fails for two additional, independent reasons. First, Trident's state-law claim is preempted by the comprehensive federal regulatory regime adopted by Congress in the Exchange Act. Additionally, Trident fails to allege the required elements of tortious interference under New York law.

**1.      Trident's State-Law Claim Is Preempted.**

The Exchange Act's comprehensive regulatory framework preempts Trident's state-law claim challenging Nasdaq's and its employees' performance of their congressionally delegated regulatory responsibilities.

The question whether federal law preempts state law is one of "congressional intent." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 151-52 (2d Cir. 2016). A state law is preempted when it conflicts with federal law or "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 151 (citation omitted). Courts have "consistently found [that] Congress's intent under the Exchange Act" was to preempt state-law claims that are "based on an SRO's duties under the Exchange Act." *Series 7*, 548 F.3d at 113-14. In lieu of state-law liability, "Congress created a self-contained process to review and remedy such complaints." *Id.* at 114. Under this federal regulatory regime, the SEC must review and (with limited exceptions) approve self-regulatory organizations' rules and may amend them unilaterally. 15

U.S.C. § 78s(b)(1), (c).  In turn, a self-regulatory organization must "comply" and "enforce compliance" with "its own rules."  *Id.* § 78s(g)(1).  If a self-regulatory organization violates its rules, the Exchange Act, or the Act's implementing regulations, the SEC may suspend the self-regulatory organization's registration as well as "censure or impose limitations upon [its] activities, functions, and operations."  *Id.* § 78s(h)(1).  Congress also provided an administrative mechanism for challenging exchanges' listing decisions, *id.* § 78s(d)(1)-(2), and authorized any "person aggrieved" by the SEC's administrative ruling, or by an SEC order disciplining, or refusing to discipline, a self-regulatory organization, to "obtain review" directly in a federal court of appeals.  *Id.* § 78y(a)(1).  But Congress did *not* authorize a private right of action under the Exchange Act to "challenge an exchange's failure to follow its own rules."  *Desiderio*, 191 F.3d at 207-08.

These aspects of the Exchange Act's regulatory structure demonstrate Congress's intent to preempt state-law claims alleging that self-regulatory organizations improperly discharged their regulatory responsibilities.  *See Series 7*, 548 F.3d at 114 ("[R]ather than allowing plaintiffs to sue under common law theories, Congress created a self-contained process to review and remedy such complaints.").  Indeed, "allow[ing] states to define by common law the regulatory duties of a self-regulatory organization[ is] a result which cannot co-exist with the Congressional scheme of delegated regulatory authority under the Exchange Act."  *Sparta*, 159 F.3d at 1215.

Measured against these standards, Trident's state-law claim is plainly preempted.  Trident alleges that Nasdaq "created insurmountable obstacles to stop MEOA and Digerati from closing the Business Combination" through the exercise of its regulatory listing responsibilities.  Compl. ¶ 99.  Allowing this claim to proceed would thus require a jury to decide whether Nasdaq can "support its claim that it was required to use Digerati's OTC price for the post-merger valuation."  *Id.* ¶ 98; *see also id.* ¶ 97 (Nasdaq "suddenly and without explanation substituted its valuation for

21

the post-merger company in lieu of the" valuation provided by MEOA).  It would further require a jury to parse how these regulatory actions compared to Nasdaq's evaluation of similarly situated companies.  *See id.* ¶ 97.

Because Trident seeks to impose state-law liability based on Nasdaq's performance of its duties to promulgate, interpret, and enforce listing requirements—duties created by, and subject to, the comprehensive regulatory structure that Congress established under the Exchange Act—its state-law claim would directly undermine that federal regime and is preempted.  *See Lanier*, 838 F.3d at 155 (holding that state-law contract claims implicating exchanges' regulatory obligations to disseminate market data were preempted where "conflicting judicial interpretation of the SEC requirements" would "stand as an obstacle to the uniformity that Congress intended").

### 2.  Trident Fails To State A Claim For Tortious Interference.

Trident's state-law claim must also be dismissed because the Complaint does not allege tortious interference by Nasdaq or the Individual Defendants with *Trident*'s business relationships.

To state a claim for tortious interference with an advantageous business relationship under New York law, a plaintiff "must allege that . . . the defendant knew of that relationship and intentionally interfered with it."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (internal quotation marks omitted); *see also Lee Dodge, Inc. v. Sovereign Bank, N.A.*, 148 A.D.3d 1007, 1009 (N.Y. App. Div. 2017); *Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) ("Tortious interference with a business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same." (citation omitted)).

Trident's tortious-interference claim fails to allege that Nasdaq or the Individual Defendants "knew of [*Trident's*] relationship" with MEOA and "intentionally interfered with it."  *Kirch*, 449 F.3d at 400 (citation omitted).  The Complaint alleges only that Nasdaq knew of MEOA's

potential business relationship with Digerati, which was disclosed in MEOA's listing application. *See* Compl. ¶¶ 38-40.  But the Complaint contains no allegations that Nasdaq or the Individual Defendants knew of or intentionally interfered with any business relationship involving *Trident*, which, through its members, was merely a minority investor in MEOA.  *Id.* at 1, ¶ 1.  That omission is fatal.

**D.    Trident Fails To Allege Any Misconduct By The Individual Defendants.**

Finally, each of Trident's claims against the Individual Defendants fails for the additional reason that Trident does not plausibly allege any specific misconduct by them.

The Complaint is plainly deficient as to Higgins and Utochkin, alleging only that they are "employee[s] at NASDAQ who evaluated the Business Combination," Compl. ¶¶ 4, 7, and that Utochkin was a member of the "Listing Team" that reviewed MEOA's application, *id.* ¶ 39.  Although Federal Rule of Civil Procedure 8(a) "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," at minimum, the complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ludwig's Drug Store, Inc. v. Forest City Enters., Inc.*, 2016 WL 915102, at *10 (E.D.N.Y. Mar. 4, 2016) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).  "This standard is not satisfied '[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.'"  *Id.* (quoting *Atuahene*, 10 F. App'x at 34).

The Complaint's allegations regarding Haskell are similarly vague and generally allege only that Haskell "led a team" responsible for reviewing initial listing applications and "played an integral role in evaluating the Business Combination."  Compl. ¶ 3; *id.* ¶ 39 (listing Haskell as one of the members of the "Listing Team" that reviewed MEOA's application).  Trident alleges only a single substantive communication by Haskell to MEOA.  *Id.* ¶ 59; *see id.* ¶ 42 (alleging that Haskell could not explain Nasdaq's rationale for its valuation methodology).

As to Choi and Golub, the Complaint alleges generally that they were each "an employee at NASDAQ who evaluated the Business Combination" and served on the "Listing Team." Compl. ¶¶ 5, 6, 39.  But the allegations supporting the causes of action identify only a statement from Choi that Nasdaq previously provided notice regarding the valuation requirements for the combined company, *see id.* ¶ 59, and a further passing statement by Choi and Golub regarding Nasdaq's evaluation of MEOA's listing application, *see id.* ¶¶ 63, 86.  These fleeting statements are insufficient to support a claim under Rule 8.

## V.     CONCLUSION

The Court should dismiss the Complaint with prejudice for failure to state a claim under Rule 12(b)(6).  Trident waived any right to file an amended complaint by ignoring in its pre-motion letter this Court's order to "address whether Plaintiff believes the complaint can be amended to address the issues raised in Defendants' letter."  May 3, 2024 Docket Order.

Dated:   July 10, 2024                                     Respectfully submitted,

                                                           */s Amir C. Tayrani*
                                                           Amir C. Tayrani, *pro hac vice*
                                                           Alex Gesch, *pro hac vice*
                                                           GIBSON, DUNN & CRUTCHER LLP
                                                           1050 Connecticut Avenue, N.W.
                                                           Washington, D.C.  20036-5306
                                                           T: (202) 887-3692
                                                           F: (202) 530-9645
                                                           ATayrani@gibsondunn.com
                                                           AGesch@gibsondunn.com

                                                           *Counsel for Defendants*

24