UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRIDENT CAPITAL GROUP FUND I LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE NASDAQ STOCK MARKET, LLC, BENJAMIN HASKELL, NIKOLAI UTOCHKIN, EUN AH CHOI, ARNOLD GOLUB, and STANLEY HIGGINS,<br><br>Defendants. | **ORDER DISMISSING CASE**<br>24-CV-02318 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

On December 9, 2024, the Court issued an Order directing the parties to show cause why this action should not be dismissed without prejudice for lack of subject-matter jurisdiction. *See* ECF No. 43. Plaintiff filed its response on December 20, 2024, *see* ECF No. 44, and Defendants filed their response on December 31, 2024, *see* ECF No. 45. Having reviewed the parties' submissions, the Court concludes that Plaintiff lacks Article III standing, and therefore dismisses this case without prejudice pursuant to Rule 12(h)(3).

## BACKGROUND

As previously explained in the Order to Show Cause, *see* ECF No. 43 at 1, and as the parties' responses thereto confirm, *see* ECF No. 44 at 1–2; ECF No. 45 at 1, Plaintiff invested in a company named Minority Equality Opportunities Acquisition Sponsor, LLC. ECF No. 1 ¶¶ 1, 18 (Compl.).[1] That company then "sponsored" Minority Equality Opportunities Acquisition,

---

[1] Unless otherwise indicated, when quoting cases and the Court's Order to Show Cause, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Inc. ("MEOA"), a special purpose acquisition company, or "SPAC." *Id.* ¶ 18.² MEOA, through a subsidiary, sought to merge with a target company, and MEOA and the target would become one publicly traded company. *Id.* ¶¶ 13–14, 33. But Plaintiff alleges that Defendant Nasdaq launched a "multi-pronged assault to scuttle the [MEOA-target] Business Combination," *id.* ¶ 40, ultimately resulting in its demise, *id.* ¶ 65.

The Court also previously explained, *see* ECF No. 43 at 1–2, that it "lacks subject matter jurisdiction—and therefore cannot consider a lawsuit's merits—unless three constitutional standing requirements are met." *Salazar v. NBA*, 118 F.4th 533, 540 (2d Cir. 2024). Those are: (1) "the plaintiff must have suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "that injury must be traceable to the defendant's challenged conduct—it must have been likely caused by the defendant"; and (3) "it must be likely that the injury would be redressed by judicial relief." *Id.* at 540–41. "Because the question of standing goes to the constitutional limitations on the 'judicial Power of the United States,' which is limited to resolving 'Cases' or 'Controversies,' U.S. Const. art. III, [the Court is] entitled at any time *sua sponte* to delve into the issue of standing even if defendants do not raise the issue." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

In view of the foregoing standards, the Court explained that it had "serious doubt about whether Plaintiff has carried its burden to demonstrate Article III standing" given that "[e]ach of Plaintiff's three causes of action alleges an injury to MEOA, not itself, nor the sponsoring entity it alleges that it invested in." *See* ECF No. 43 at 2. Accordingly, the Court explained, "Plaintiff

---

² According to Plaintiff, SPAC "[s]ponsors and their insiders provide know-how, expertise, business introductions, and capital," and perform other tasks to facilitate the merger. *See* ECF No. 44 at 3.

seeks to advance claims on behalf of a third-party, MEOA, from which it is also one corporate layer removed, having only alleged to have invested in MEOA's sponsor." *Id.*

## DISCUSSION

### I. Article III Standing

The Second Circuit has made clear that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987). And the Circuit has further explained that a shareholder's inability to assert third-party claims on behalf of an investee corporation implicates constitutional standing and, therefore, this Court's subject-matter jurisdiction. *See Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 n.1 (2d Cir. 2015) (citing, *inter alia*, *Jones*). Thus, as previously stated, *see* ECF No. 43 at 3, Plaintiff has failed to "plead facts show[ing] a particularized injury to [itself], one distinct from any injury to" MEOA, meaning that it lacks standing. *See Steinberger*, 634 F. App'x at 11–12.

In Plaintiff's response, it argues that "[it] is not alleging wrongs as an ordinary shareholder in MEOA Sponsor or MEOA Inc." and that its "injuries are distinct because its role as a sponsor-insider was more akin to a manager or operator, and its injuries are particularized as a result." *See* ECF No. 43 at 2.[3] In other words, Plaintiff asserts that it is more than a "typical," "ordinary," or "mere" shareholder." *See id.* at 2–4. It provides several unpled assertions seeking to emphasize the closeness of its relationship to, and the size and importance of its stake in, MEOA. *See, e.g., id.* at 3 (explaining that the SPAC sponsor Plaintiff invested in could expect

---

[3] Plaintiff does not, however, explain why a "manager or operator" would have standing in these circumstances, and it would be error to assert as much. *See Monahan v. Peña*, No. 08-cv-2258, 2009 WL 2579085, at *3 (E.D.N.Y. Aug. 18, 2009) (Bianco, J.) ("An officer . . . has no standing to sue to vindicate the rights of his corporation.").

3

"disproportionate upside" if the SPAC merger was successful); *id.* at 4 (stating that Plaintiff provided MEOA with the "operational wherewithal" to secure regulatory approval). In attempting to establish Article III standing, Plaintiff principally relies on *Funicular Funds, LP v. Pioneer Merger Corp.*, 700 F. Supp. 3d 49 (S.D.N.Y. 2023). In that case, a public shareholder of a SPAC sued the SPAC and certain of its insiders, claiming that defendants "misappropriated a fee that [plaintiff] allege[d] should have been doled out to public shareholders like itself." *Id.* at 52. In assessing the enforceability of a forum selection clause as part of defendants' *forum non conveniens* motion, the court found that plaintiff was a third-party beneficiary of the SPAC sponsor agreement, reasoning that the agreement "plainly obligate[d] the [s]ponsor and its insiders to take certain actions for the benefit of [the public] shareholders." *Id.* at 55–57. Plaintiff now argues that that stands for the proposition that "a SPAC should not be subject to the same rule for other corporations where shareholders have no standing to claim injury of the corporation" because a SPAC "is categorically different than other companies, and an injury to the SPAC is injury to the sponsor/insiders of the sponsor." *See* ECF No. 44 at 2–3.

Plaintiff's argument is not persuasive. *Funicular Funds* explains unique features of SPACs, but it does not purport to create a special Article III standing rule for SPAC shareholders.[4] Indeed, its analysis of third-party contractual standing did not address Article III standing. *See Funicular Funds*, 700 F. Supp. 3d at 57–58. That makes sense because in that case, plaintiff alleged that defendants, the SPAC and its insiders, injured it. In this case, by contrast, Plaintiff claims that Defendants injured the SPAC, and that, in turn, injured Plaintiff's

---

[4] Nor do Plaintiff's other authorities, which just describe the mechanics of SPAC transactions. *See In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 520–21 (S.D.N.Y. 2024); *In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906, 2024 WL 1348749, at *7 (S.D.N.Y. Mar. 29, 2024); *Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 365 (E.D.N.Y. 2022).

interest in the SPAC's sponsor.  The distinction matters:  "[e]ven though [Plaintiff] may have felt personally aggrieved by [D]efendants' [conduct], and even though [it] may have faced the risk of financial loss as a result," "[a] shareholder—even the sole shareholder—does not have standing to assert wrongs to the corporation."  *Jones*, 836 F.2d at 736.  In this sense, this case is just like *Chowdhury v. VEON Ltd.*, in which the court dismissed on Article III standing grounds plaintiff's claims based on the allegation that defendant "thwarted and sabotaged" a company he had invested in.  No. 21-cv-3527, 2022 WL 956271, at *1, *4 (S.D.N.Y. Mar. 30, 2022) (collecting cases).  Thus, a straightforward application of *Jones* and *Steinberger* requires dismissal here for lack of Article III standing and, therefore, subject-matter jurisdiction.

## II.  Leave to Amend

Plaintiff, without identifying any relevant law, also seeks leave to amend to "further clarify the injury to Trident . . . [a]nd, perhaps, to add Rochester and Digerati Technologies, Inc. as plaintiffs."  *See* ECF No. 44 at 5.  For context, Plaintiff states in its letter that Shawn Rochester was, among other things, Plaintiff's own Managing Member as well as President and CEO of MEOA, *see id.* at 2, while Digerati was the merger target, *see* ECF No. 1 ¶ 31.  The Court denies Plaintiff's request.

Beginning with Plaintiff's request to "clarify" its injury, it is well-established that "standing is to be determined as of the commencement of the suit."  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 422 (2d Cir. 2015).  And a plaintiff "may cure defective jurisdictional allegations, unlike defective jurisdiction itself, through amended pleadings."  *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 388–89 (2d Cir. 2021).  The problem here, though, and the reason why the standing defect is not curable, is that it stems not from the description of the injury but rather from the fact that "[Plaintiff]

5

neither suffered the injury for which [it] sued nor was assigned the claims [it] brought by the party that did suffer that injury." *See Alix v. McKinsey & Co.*, No. 18-cv-4141, 2024 WL 3293621, at *10 (S.D.N.Y. July 3, 2024) (dismissing action for lack of Article III standing). In other words, "this is a case 'in which the originally named plaintiff never possessed a claim against the defendant[s].'" *Id.* (quoting *Fund Liquidation Holdings*, 991 F.3d at 389 n.10). Plaintiff's response to the Order to Show Cause confirms this, as it just presses on the relationship between Plaintiff and the allegedly injured non-party. *See* ECF No. 44 at 4. But, for the reasons just explained, because Plaintiff experienced no "direct individual injury" at the hands of Defendants, *see Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019), Plaintiff "had no justiciable claim against [Defendants] when it filed suit," *see UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 21-cv-4897, 2024 WL 4355029, at *11 (S.D.N.Y. Sept. 30, 2024). And that standing defect "cannot be cured after the fact." *See id.* at *12 (applying *Alix* and dismissing for lack of standing).

Similar analysis applies to Plaintiff's request to add Rochester and/or Digerati as a plaintiff. The request does not appear to implicate, and Plaintiff does not attempt to rely on, Rule 17(a)(3).[5] Nor does Plaintiff mention amendment under Rule 15, but that would also not work. Although the *Fund Liquidation Holdings* court disavowed the so-called "nullity doctrine," "which says that a case initiated in the name of a plaintiff that lacks standing is an incurable

---

[5] That Rule states that the Court may "not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." However, courts have rejected efforts to use Rule 17(a)(3) in cases like this one in which the original plaintiff lacks Article III standing not as the result of a "technical error in the original pleading's caption," since after amendment, "Defendants would be facing a different party with different substantive rights and interests at issue in the action." *See Alix*, 2024 WL 3293621, at *10–13; *UMB Bank*, 2024 WL 4355029, at *11–12; *see also Cortlandt St.*, 790 F.3d at 424 ("Rule 17(a) does not extend or limit the subject matter jurisdiction of a federal court.").

6

nullity," it nevertheless reaffirmed that a plaintiff cannot amend to "substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not."  991 F.3d at 386, 389.  That is consistent with the Circuit's rule that "Article III is satisfied so long as a party with standing to prosecute the *specific claim in question* exists at the time the pleading is filed."  *Id.* at 386 (emphasis added).  Here, allowing amendment to add "wholly new individuals who, until th[is] point, ha[ve] not been participants in the case," such that this action would take on "the characteristics of a new lawsuit," would run afoul of that jurisdictional principle.  *See In re Ace Sec. Corp. RMBS Litig.*, No. 13-cv-1869, 2015 WL 1408837, at *7 (S.D.N.Y. Mar. 26, 2015) (Nathan, J.) (cited by *Fund Liquidation Holdings*, 991 F.3d at 389); *see also In re Patriot Nat'l, Inc. Sec. Litig.*, No. 17-cv-1866, 2021 WL 3418615, at *11 (S.D.N.Y. Aug. 5, 2021) (explaining that "'if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim'" in "situations where an individual plaintiff lacked standing over an existing claim, and proposed amending their complaint to add a wholly new party who did not have existing claims, for the purpose of curing the original defect" (quoting *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012)).  The Court, therefore, may not permit amendment under Rule 15.

      That being said, even assuming that it is possible to use Rule 15 to try to cure a standing defect by adding an entirely new plaintiff with standing, Plaintiff does not endeavor to explain how the amendments proposed here would do that.  On this point, it is worth emphasizing again that all of Plaintiff's allegations of direct harm concern MEOA, not Rochester or Digerati.  *See* ECF No. 43 at 2.[6]  Plaintiff does not state how Digerati would have Article III standing.  And

---

[6] This remains so no matter how many articulations of the injury Plaintiff puts forward.  For example, it now states that "[it] was subject to racial animus" by Defendant Nasdaq.  *See* ECF No. 44 at 4.  And Nasdaq allegedly did that by "treat[ing] Rochester, Trident, and MEOA's

7

even considering Plaintiff's unpled allegations regarding Rochester, *see* ECF No. 44 at 4, he seems to run into the same problem that Plaintiff does, as all Plaintiff tries to do is emphasize Rochester's interest in the SPAC transaction. As already discussed, that is not enough.

### III. Self-Regulatory Organization Immunity

Defendants agree that Plaintiff lacks standing. *See* ECF No. 45 at 1–2. Nevertheless, they state that "this Court need not wade into the issue of SPAC sponsor standing in failed merger cases to dismiss this case at the threshold." *See id.* at 2.[7] Instead, Defendants encourage the Court to dismiss this case based on their immunity as a self-regulatory organization ("SRO immunity"), *see id.* at 2–3, as forcefully argued in their pending motion to dismiss, ECF No. 37.

Having determined that dismissal of this action is required due to Plaintiff's lack of Article III standing, the Court declines Defendants' invitation to reach the issue of SRO immunity. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019) ("defenses and objections become moot and do not need to be determined" following dismissal for lack of subject-matter jurisdiction). To be sure, Defendants correctly argue, ECF No. 45 at 2, that a court has "'leeway' to dismiss actions based on non-jurisdictional, non-merits grounds, particularly where the constitutional-jurisdiction question is difficult to determine and dismissing on the threshold issue is the less burdensome course," *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 370 (2d Cir. 2023). However, the Second Circuit has not recognized SRO

---

application differently from [that of] similarly situated SPACs." *Id.* That formulation, which is not in the Complaint, just underscores the standing problem: neither Plaintiff nor Rochester had an "application" before Nasdaq for Nasdaq to "treat." Only MEOA did. *See, e.g.*, ECF No. 1 ¶ 44 (alleging that Nasdaq "dealt a mortal wound to MEOA's listing application").

[7]   For the sake of clarity, the Court pauses to observe that this case does not really implicate the theoretical issue of "SPAC sponsor standing." ECF No. 45 at 2–3. Rather, it involves the application of settled principles regarding "a shareholder's inability to assert third-party claims on behalf of an investee corporation," as the Court previously stated. *See* ECF No. 43 at 2.

immunity as creating one of those unique scenarios—including *forum non conveniens*, *Younger* abstention, a *Totten* bar, or issue preclusion—in which it is appropriate to depart from the "ordinary rule that courts must address questions pertaining to constitutional jurisdiction first." *See id.*; *see also Funicular Funds*, 700 F. Supp. 3d at 59 n.7 (applying the doctrine to international comity abstention). Nor do Defendants point to any authority holding as much, and their proposition appears inconsistent with the Circuit's practice. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 45 (2d Cir. 2017) (reaching the issue of SRO immunity "[b]ecause we agree with the district court that it had subject matter jurisdiction"). Furthermore, as demonstrated by the above analysis, the jurisdictional issue in this case is neither "difficult" nor "burdensome" to resolve such that it would be appropriate for the Court to bypass the jurisdictional question. *See Phoenix Light*, 66 F.4th at 370; *see also Sinochem Int'l Shipping Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("If . . . a court can readily determine that it lacks jurisdiction over the cause[,] . . . . the proper course would be to dismiss on that ground."). Accordingly, today's dismissal is based on constitutional standing alone.

## CONCLUSION

For the reasons explained herein, Plaintiff's Complaint is dismissed without prejudice for lack of subject-matter jurisdiction. Defendants' motion to dismiss, ECF No. 37, is denied as moot. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

                                              */s/ Hector Gonzalez*
                                              HECTOR GONZALEZ
                                              United States District Judge

Dated: Brooklyn, New York
       January 6, 2025